Gene KING *v.* ELKINS PUBLIC SCHOOLS

CA 87-36                                   733 S.W.2d 417

Court of Appeals of Arkansas
En Banc
Opinion delivered July 22, 1987

*Mitchell & Roachell,* by: *Paul J. Ward,* for appellant.

*Niblock Law Firm,* by: *Nancy L. Hamm,* for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from the circuit court of Washington County, the fourth judicial district, second division. Appellant, Gene King, appeals the decision of the circuit court affirming the nonrenewal of appellant's contract by appellee, the Elkins Public Schools. We affirm.

Appellant argues as his sole point for reversal that the circuit court erred in affirming appellee's nonrenewal of appellant's contract for insubordination without requiring proof of an intentional violation of school policy by appellant. Appellant asserts that insubordination must consist of some willful disobedience by the teacher in order to constitute a "cause which is not arbitrary, capricious, or discriminatory" under Arkansas Statutes Annotated § 80-1266.9(b) (Supp. 1985). Appellant acknowledges in his brief that he has found no Arkansas law that defines insubordination in the school context. Appellant cites cases from other states where insubordination has been defined.

The standard of review on appeal from the trial court's review of a school board's decision not to renew a teacher's contract is that this court will affirm unless the trial court's findings are clearly erroneous. The determination not to renew a teacher's contract is a matter within the discretion of the school board and this court cannot substitute its opinion for that of the board in the absence of an abuse of discretion by the board. *Leola*

*School District* v. *McMahan*, 289 Ark. 496, 712 S.W.2d 903 (1986).

Arkansas Statutes Annotated § 80-1266.9(b) provides in pertinent part as follows:

> (b) Any certified teacher who has been employed continuously by the school district three (3) or more years (or who may have achieved nonprobationary status pursuant to Section 2 [§ 80-1266.1] herein), may be terminated or the board may refuse to renew the contract of such teacher for any cause which is not arbitrary, capricious, or discriminatory, or for violating the (the) reasonable rules and regulations promulgated by the school board.

■ The question before the trial court in the case at bar was whether the board refused to renew appellant's contract for reasons permitted by the Teacher Fair Dismissal Act. A school board's action in this regard is arbitrary, capricious, or discriminatory only if the board's decision is not supportable on any rational basis. *Kirtley* v. *Dardanelle Public Schools*, 288 Ark. 86, 702 S.W.2d 25 (1986).

Appellant was employed by the Elkins School District as head football coach for six years. He was notified in April of 1985 by James K. Carter, Superintendent of the Elkins School District, that he was not being recommended for employment in the Elkins schools for the 1985-86 school year. The reasons given for the nonrenewal recommendation were failure to follow school policies and insubordination.

On May 20, 1985, appellant requested a public hearing before the school board and a specification of the charges upon which the nonrenewal recommendation was based. On May 28, 1985, appellant was notified by a letter that a meeting would be held on May 30, 1985, in order to conduct a hearing. The letter explained that the reasoning behind the superintendent's nonrenewal recommendation was appellant's insubordination and failure to abide by the policies, regulations, and recommendations of the superintendent and the board, particularly with regard to the use of volunteer personnel in athletic events, the most blatant example being the use of a volunteer in the St. Paul versus Elkins game. The letter went on to state that, at the St.

Paul-Elkins game, a volunteer acted as an assistant coach in derogation of the instructions from the superintendent and the board, and in violation of the AAA regulations, and that this problem had been pointed out to appellant by the board, the superintendent, and the principal.

On May 30, 1985, a public hearing was held before the Elkins School Board on the superintendent's recommendation that appellant's contract not be renewed for the 1985-86 school year. The board met on June 4, 1985, and unanimously voted to nonrenew appellant's contract. The board concluded in a letter, dated June 5, 1985, that appellant was well informed by the superintendent and the athletic director-principal of the expectations and regulations of the school board concerning the use of noncertified personnel at the interscholastic athletic events. The letter concluded that, in spite of the wishes of the board and the administration, appellant had persisted in pursuing a course of action and conduct inconsistent with the policies concerning use of the volunteers at interscholastic events. The letter stated that appellant violated the board's policy in his use of volunteer assistants at the St. Paul versus Elkins football game in the 1984 season, and that such act was an act of insubordination.

Appellant appealed this decision to the Washington County Circuit Court and, after a trial on September 26, 1986, the circuit court upheld the nonrenewal, finding that the nonrenewal decision on the part of the board was not an arbitrary or capricious decision because it was based upon credible evidence presented to the board that appellant had violated the policies concerning the use of non-certified volunteer coaches at the St. Paul and Greenland games in the 1984-85 school year.

■ The issue before us now is whether the court erred in affirming appellee's nonrenewal for insubordination without requiring proof of an intentional violation of school policy by appellant. We find that the court did not commit an error and that proof of intent is not required by the law.

The evidence of record supports the trial court's findings. The school board promulgated a rule that stated as follows: "Voluntary help with any athletic team will only be permitted during practice under the supervision of a certified coach and with prior approval of the school administration. No voluntary

person will be permitted on the playing field or sidelines during pre-game or during any athletic event with the exception of members of the officiating unit, such as the chain gang or downs marker for football." Appellant acknowledged that he had read the rule and that he had talked with the administration concerning enforcement of the rule on a number of occasions. Appellant asserts in his brief that he did not intentionally violate the policy of the school board. He admitted in testimony, however, that he understood the rule to state that the volunteers, under no circumstances, were to coach the players during athletic events.

Testimony established that during the St. Paul-Elkins game on October 26, 1984, a non-certified volunteer assistant, Dale White, got in front of the rope on the sidelines that keeps spectators from getting on the playing field. The referee told White to get in the coach's box because he was in front of the rope and he was transmitting signals to the players. Coach King told White to get behind the rope. Appellant admitted that, though White did get behind the rope, he was still transmitting signals to the players. The referee then penalized the Elkins team and informed appellant that if White didn't get in the coach's box Elkins would be penalized again. Eventually White did get in the coach's box.

Appellant testified that White was "relaying signals" to the players, not making his own coaching calls. White himself testified that he was "coaching." Appellant testified that he called the volunteer assistants "coaches," and that he thought that the rule permitted them to signal the players from the stands during games.

The superintendent testified that the non-certified volunteers were very evident at the Farmington game and that he told appellant after that game that this was not permissible. The superintendent stated that later, at the Greenland game, the volunteer aides were there just as if nothing had been said. He testified that the volunteer aides were "actually physically coaching." According to the superintendent, each time the superintendent talked to appellant about this problem, appellant's response was that he didn't have any control over the volunteers.

There is evidence in the record that appellant had been told

that the volunteer coaching situation was causing problems between the administration and the parents. Appellant admitted that he was aware that the parents were upset and that there had been a "march" by the parents on this issue. The board members testified that they were concerned that the school was violating the AAA rules which prohibited coaching by non-certified persons. There was evidence that violation of the AAA rules might have resulted in forfeiture of a game had the Elkins team won.

As stated earlier, appellant cites no Arkansas case law defining "insubordination." Appellant attempts to persuade this court to adopt a definition of "insubordination" which would require a showing of some willful disobedience by the teacher in order to constitute a "cause which is not arbitrary, capricious, or discriminatory" under § 80-1266.9(b).

The school board explained the reasons behind appellant's nonrenewal as his insubordination *and* his failure to abide by the policies, regulations, and recommendations of the board and the superintendent. The appellate court does not reverse a trial court if its judgment is correct for any reason. *Leola School District v. McMahan*, 289 Ark. 496, 712 S.W.2d 903 (1986). We do not adopt the definition promoted by appellant, which requires a showing of willful disobedience, though the evidence in the record could support a finding of willful disobedience. The statutes and the case law have addressed this issue and, while not specifically defining "insubordination," have enunciated the test to be applied in nonrenewal cases, *i.e.*, the board may refuse to renew the contract for any cause which is not arbitrary, capricious, or discriminatory. We hold that the trial court's findings affirming the board are not clearly erroneous. Therefore, we affirm.

Affirmed.

COOPER, J., dissents.